UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERALD J. CANDELORO,<br>    *Plaintiff*, | )  CASE NO. 3:23-cv-00585 (KAD)<br>)<br>) |
| v. | )<br>) |
| ALLSTATE INSURANCE CO, *et al.*,<br>    *Defendants*. | )  MARCH 26, 2025<br>) |

**MEMORANDUM OF DECISION**
**RE: MOTION TO DISMISS (ECF NO. 18)**

Kari A. Dooley, United States District Judge:

Plaintiff Gerald Candeloro ("Plaintiff") brings this action against Defendant Jason Garoppolo ("Garoppolo" or "Defendant"), an insurance agent, for Garoppolo's failure to heed Plaintiff's request that he renew Plaintiff's flood insurance policy with the Allstate Insurance Company ("Allstate") in a timely fashion.[1] While Plaintiff has since secured the coverage that lapsed as a result of Defendant's purported misfeasance, he alleges modest, though identifiable damages as a result. Plaintiff brings six counts against Defendant Garoppolo, alleging negligence (Count Two); professional malpractice (Count Three); breach of contract (Count Four); breach of fiduciary duty (Count Five); a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA") (Count Six); and bad faith (Count Seven). *See* Compl., ECF No. 1-1. Pending before the Court is Defendant's motion to dismiss Counts Two, Three, Five, Six, and Seven, which Plaintiff opposes. *See* Def.'s Mot. to Dismiss, ECF No. 18; Pl.'s Opp'n, ECF No. 24. For the reasons that follow the motion is GRANTED in part and DENIED in part. Counts Five, Six and Seven are DISMISSED.

**Standard of Review**

---

[1] Plaintiff and Allstate entered a stipulation of dismissal as to Plaintiff's claims against Allstate on July 18, 2023, and Allstate was terminated as a defendant on that date. *See* Stipulation of Dismissal, ECF No. 21.

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Allegations**

The Plaintiff's allegations, taken as true, are summarized as follows. Plaintiff owns property in Mystic Connecticut. Compl. at ¶¶ 1–2.[2] Each year since 2000, Plaintiff has purchased a "FEMA Flood Policy" for this property via the Allstate Insurance Company franchise in Groton, Connecticut. *Id.* at ¶ 3. Defendant Garoppolo, who "was and is an Allstate insurance agent," is the owner of the Allstate franchise in Groton. *Id.* at ¶¶ 5–7. On September 14, 2021, Plaintiff purchased an Allstate flood insurance policy through Garoppolo. *Id.* at ¶ 9. The policy had an expiration date of September 29, 2022. *Id.* From August 9, 2022, through October 7, 2022, Plaintiff repeatedly requested that Garoppolo renew the flood insurance policy. *Id.* at ¶¶ 17–25. On October 7, 2022,

---

[2] The paragraphs in Plaintiff's Complaint are individually numbered, but the numbering resets after Count One. All subsequent paragraphs are numbered sequentially. Because Count Two restates all factual allegations in Count One that are relevant to the remaining Defendant, when citing to the Complaint the Court uses the individual paragraph numbers.

Plaintiff's mortgage company alerted him that it had not received a certificate of renewal for the flood insurance. *Id.* at ¶ 21. Although the policy had lapsed, Plaintiff was still within the grace period for renewal. *Id.* at ¶ 26. Defendant assured Plaintiff that he could easily renew the policy and that he would do so. *Id.* Defendant did not timely renew the flood insurance, and the policy expired. *Id.* at ¶ 30. Plaintiff's mortgage company bought temporary flood insurance and charged the cost to Plaintiff. *Id.* at ¶ 32. Plaintiff alleges other monetary damages as well. *Id.* at ¶ 44.[3]

**Discussion**

*Preemption*

Defendant first claims that Counts Two, Three, Five, Six, and Seven are preempted under the National Flood Insurance Act (NFIA). Mot. to Dismiss at 1. Plaintiff asserts that his claims against the insurance agent or broker are excluded from preemption under the NFIA. Pl.'s Opp'n at 4. The Court agrees with Plaintiff.

The NFIA established a National Flood Insurance Plan (NFIP), which is administered by FEMA. *See Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). The NFIA includes provisions allowing an insured to challenge the denial of coverage under flood insurance policies by bringing a breach of contract action in federal court. 42 U.S.C. § 4072. Section 4072 authorizes suits against FEMA as well as the company issuing the policy. *Palmier v. Allstate Ins. Co.,* 445 F.3d 179, 186 (2d Cir. 2006). By regulation, in 2000, FEMA added an express preemption clause to its Standard Flood Insurance Policy ("SFIP"), providing that "…all disputes arising from the insurer's policy issuance, policy administration, or the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the [NFIA], and Federal

---

[3] Plaintiff alleged that the need to procure a new policy, as opposed to simply renewing the policy he already had, was going to result in significantly higher premiums. Compl. at ¶¶ 33, 42. During the pendency of the case, the parties have reported that Plaintiff was able to secure flood insurance without incurring increased premiums. Thus, his damages claim at this point is concededly nominal.

3

common law." 44 C.F.R. § Pt. 61, App. A(1), Art. X; *Copeland v. Allstate Ins. Co.*, No. 14-CV-1556 (AMD)(JO), 2017 WL 10088571, at *4 (E.D.N.Y. Jan. 27, 2017).[4]

In *Campo*, the Fifth Circuit held that the express preemption regulation did not apply to disputes surrounding the "procurement" of flood insurance. There, the plaintiff's coverage period ended on August 13, 2005, and he failed to pay his premium during the 30-day grace period that followed. *Campo*, 562 F.3d at 752. Hurricane Katrina destroyed his home on August 29, 2005. Due to the storm, FEMA then extended the grace period by an additional 90 days. *Id.* at 753. The plaintiff was provided an advance against his claim, with full payment contingent upon paying the premium by the end of the extended grace period. He did not pay the premium and his claim was denied. The plaintiff alleged that he was prevented from renewing his flood insurance policy due to the defendant's failure to advise him as to the premium payment contingency. *Id.*

The Fifth Circuit reasoned that because the plaintiff's coverage had expired, it was only subject to restoration by paying the premium within the grace period. Thus, Plaintiff was a "former policy holder, who would have had to procure new coverage, which he could do by paying the premium and thereby reinstating his expired policy." *Id.* at 756. The Court concluded that "even though this is not a matter of initial procurement, the discrete facts of this case nevertheless demonstrate that it is procurement-related," and thus not preempted. In so concluding, the Court first observed that the FEMA regulations expressly preempted state law "only as to handling-

---

[4] The current SFIP express preemption clause, quoted above, is a 2020 revision to the original 2000 clause. *See* National Flood Insurance Program: Conforming Changes To Reflect the Biggert-Waters Flood Insurance Reform Act of 2012 (BW-12) and the Homeowners Flood Insurance Affordability Act of 2014 (HFIAA), and Additional Clarifications for Plain Language, 85 Fed. Reg. 43946-01 (Jul. 20, 2020). Prior to this revision, the clause read "all disputes arising from the handling of any claim under the policy are governed…," rather than "all disputes arising from the insurer's policy issuance, policy administration, or the handling of any claim under the policy are governed…" *Compare Copeland*, 2017 WL 10088571, at *4 to 85 Fed. Reg. 43946-01. FEMA characterized this as a "non-substantive change" that "provides greater clarity for the reader." 85 Fed. Reg. 43946-01

4

related claims." *Id.* at 757. Further, the Court observed that "permitting procurement-related state-law tort suits does not impede the full purposes and objectives of Congress."[5]

In direct response to the *Campo* decision, FEMA issued a "Notice of FEMA's Intent to Adopt by Regulation, a Clarification of the Current Express Preemption Clause of the Standard Flood Insurance Policy." Def.'s Mem. in Supp., Ex. A, WYO Program Bulletin No. W-09038, ECF No. 18-2 (the "Notice"). The Notice states that "federal preemption should apply not just to claims handling activities, but also to policy administration. Specifically, preemption should apply to the nationally uniform and FEMA-mandated processes governing policy issuance and the administration of existing flood policies, including but not limited to rating, *renewal*, transfer, non-renewal, cancellation, or reformation." *Id.* at 2 (emphasis added). It is this language on which Defendant relies, insofar as Plaintiff's complaint relates to his failure to renew the policy at issue. The Notice, however, continues to clarify that "[i]nsurance agent procurement disputes or any allegation of negligence on the part of the insurance agent related to procurement are not subject to preemption." *Id.* And it is *this* language on which Plaintiff relies.

The Court agrees with Plaintiff. Although the Complaint repeatedly refers to Defendant's failure to renew his policy, Defendant's status as an agent—as opposed to the insurer who writes the policy—is significant, if not dispositive. FEMA did not simply issue the clarification quoted above, but explained that it "previously understood and intended its regulation to preempt state law claims related to policy formation, renewal and administration *arising from allegations of WYO Company error as distinct from agent error." Id.* (emphasis added). Thus, the Notice is

---

[5] The court observed that the NFIP's purpose was to reduce the burden on the federal fisc from flood disaster assistance, insofar as claims relating to coverage will ultimately be disbursed from federal funds through FEMA. However, FEMA does not reimburse carriers for procurement related judgments. *Id.* at 758.

directed to suits *against the insurer* and clarifies the breadth of preemption as to those suits.[6] *See Davis v. Nationwide Mut. Fire Ins. Co.,* 783 F. Supp.2d 825, 833–34 (E.D. Va. 2011) ("The Court further concludes that the state law claims against an insurance agent or broker, *as distinct from a WYO Company*, … are not preempted." (emphasis added)).

      This is clearly a case alleging "agent error." And the cases relied upon by Defendant, that distinguish between "renewal" and "procurement" in the context of preemption arguments, all involved claims against the insurer, not an insurance agent. *See, e.g., Grissom v. Liberty Mut. Fire Ins. Co.,* 678 F.3d 397, 401 (5th Cir. 2012) ("The key factor to determine if an interaction *with an insurer* is 'claims handling' is the status of the insured at the time of the interaction between the parties." (emphasis added)); *Saporito v. Stillwater Prop. & Cas. Ins. Co.,* 2016 WL 11469932 (E.D.N.Y. June 6, 2016) (Holding that once an insured has an SFIP, the relationship *with the insurer* will be governed by federal, not state law.[7]); *Copeland v. Allstate Ins. Co.,* 2017 WL 10088571, at *7 (E.D.N.Y. 2017) ("If the individual is already covered and in the midst of a non-lapsed insurance policy, the interactions *between the insurer and insured,* including renewals of insurance, are 'claims handling' subject to preemption." (emphasis added)).

      Plaintiff's Claims are not preempted. As an agent, Defendant's role was to procure coverage for Plaintiff. And whether he did that by obtaining a new policy or by renewing an existing policy, the end result is the same—coverage is procured. And although not binding on this Court, the reasoning in *Campo,* if applied here, would yield the same result.

---

[6] Notably, Allstate was a named defendant in this action. Plaintiff did not oppose Allstate's motion to dismiss on preemption grounds. *See* Stipulation of Dismissal, ECF No. 21.

[7] In *Saporito*, the court explicitly noted that the plaintiffs "did not name [their insurance agent] or any of its employees as defendants." 2016 WL 11469932, at *5.

6

The motion to dismiss Counts Two, Three, Five, Six, and Seven on the basis of preemption is DENIED.

*Count 5: Breach of Fiduciary Duty*

Alternatively, Defendant seeks to dismiss Count Five on the ground that Plaintiff has not adequately alleged a fiduciary relationship between Plaintiff and Defendant. The Court agrees.

Under Connecticut law, "[i]t is axiomatic that a party cannot breach a fiduciary duty to another party unless a fiduciary relationship exists between them." *Biller Assocs. v. Peterken*, 269 Conn. 716, 723 (2004). Further, the existence of a fiduciary relationship, though dependent upon the unique facts of each case, is a question of law to be determined by the Court. *See Iacurci v. Sax*, 313 Conn. 786, 795–96 (2014). In determining whether a fiduciary relationship exists, courts have "recognized that some actors are per se fiduciaries by nature of the functions they perform," *i.e.*, lawyers. *Id.* at 800 (internal quotation marks and citations omitted). But "[r]ather than attempt to define a fiduciary relationship in precise detail and in such a manner to exclude new situations, [the Supreme Court has] chosen to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." *Sheltry v. Unum Life Ins. Co. of America,* 247 F. Supp. 2d 169, 178 (D. Conn. 2003) (quoting *Dunham v. Dunham,* 204 Conn. 303, 320 (1987)). "[A] flexible approach determines the existence of a fiduciary duty, which allows the law to adapt to evolving situations wherein recognizing a fiduciary duty might be appropriate." *Iacurci,* 313 Conn. at 800. A fiduciary relationship "is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." *Id.* (internal quotation marks omitted). "The *unique* element that inheres a fiduciary duty to

one party is an elevated risk that the other party could be taken advantage of—and usually unilaterally." *Id.* at 801.

Given these requisites, it is hardly remarkable that "not all business relationships implicate the duty of a fiduciary." *Id.* at 800 (internal quotation marks and citation omitted). Indeed, there is a "need to avoid assigning the serious, significant duties that are expected of a fiduciary to every business arrangement." *Id.* at 801. "[A] mere contractual relationship does not create a fiduciary or confidential relationship." *Essex Ins. Co. v. William Kramer & Associates, LLC*, 331 Conn. 493, 508–09 (2019) (quoting *Saint Bernard School of Montville, Inc., v. Bank of America*, 312 Conn. 811, 836 (2014)).

Plaintiff's conclusory allegations aside, against these parameters, the Complaint fails to plausibly allege a fiduciary relationship. Plaintiff's relationship with the Defendant was not marked by any imbalance in power or other hallmarks of a fiduciary relationship, i.e. the potential for self-dealing at the client's expense or some other form of exploitation. And although Plaintiff has alleged professional negligence[8] on the part of the Defendant, this does not automatically give way to a breach of fiduciary duty. *See Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 56 (1998) ("Professional negligence alone . . . does not give rise automatically to a claim for breach of fiduciary duty."). As alleged, this was simply a commercial and professional relationship between an insured and an insurance agent.

The Motion to Dismiss Count Five is therefore GRANTED.

*Count 6: CUTPA/CUIPA*

---

[8] Although not challenged, Count Three, alleging professional negligence, appears wholly duplicative of Count Two, alleging negligence. Also not challenged is Count Four, which purports to allege breach of contract. Plaintiff does not, however, allege the existence of any contract, written or oral, between himself and Defendant. Nor does Plaintiff allege the terms of the unidentified contract. Plaintiff merely asserts that certain action by Defendant constituted a breach of contract. Eventually, these deficiencies in the pleadings will need to be addressed in advance of any trial of this matter.

CUTPA prohibits the use of "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). It further provides for a private right of action. Conn. Gen. Stat. § 42-110g(a). CUIPA, in turn, "prohibits unfair business practices in the insurance industry and defines what constitutes such practices in that industry," but it "does not authorize a private right of action." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn. 602, 623 (2015) (citing Conn. Gen. Stat. § 38a-816). The Connecticut Supreme Court has determined, however, "that individuals may bring an action under CUTPA for violations of CUIPA." *Id.* "Because CUIPA provides the exclusive and comprehensive source of public policy with respect to general insurance practices, . . . unless an insurance related practice violates CUIPA or, arguably, some other statute regulating a specific type of insurance related conduct, it cannot be found to violate any public policy and, therefore, it cannot be found to violate CUTPA." *State v. Acordia, Inc.*, 310 Conn. 1, 37 (2013); *accord Artie's Auto Body, Inc.*, 317 Conn. at 624 ("as a general rule, a plaintiff cannot bring a CUTPA claim alleging an unfair insurance practice unless the practice violates CUIPA"). As a result, "the failure of the CUIPA claim is fatal to the CUTPA claim." *Artie's Auto Body, Inc.*, 317 Conn. at 624.

Plaintiff first re-asserts the allegations in support of his breach of fiduciary duty claim, before alleging that Defendant's conduct constituted violations of CUIPA with respect to misrepresentations, claims handling procedures, and complaint handling procedures. Compl. at ¶¶ 57–59. Plaintiff does not specify which of CUIPA's many provisions were violated, and relies instead upon a generic description of the three categories or types of violations he claims are implicated. *See id.* at ¶ 58. In response, Defendant examines the statutory provisions implicated by these identified categories and persuasively argues that the allegations fall woefully short of pleading a CUIPA violation. Def.'s Mem. in Supp., ECF No. 18-1, at 9–12. The Court does not

9

detail those arguments because Plaintiff does not meaningfully respond to them. Rather, Plaintiff points to a different statute altogether, Conn. Gen. Stat. § 38a-323, governing renewal of insurance policies. Pl.'s Opp'n at 8. However, Plaintiff's after the fact effort to cure a deficient CUTPA/CUIPA claim is an improper attempt to amend the complaint through his opposition to the motion to dismiss. *See Connecticut v. Sandoz, Inc.*, No. 3:20-CV-00820 (MPS), 2024 WL 4753308, at *24, n.16 (D. Conn. Nov. 12, 2024) ("[A] a party may not amend its complaint by adding claims in a brief opposing a motion to dismiss); *Tyus v. Newton*, No. 3:13-CV-1486 SRU, 2015 WL 1471643, at *5 (D. Conn. Mar. 31, 2015) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998) ("declining to address merits of claim that 'does not appear anywhere in the amended complaint and did not enter the case until [the plaintiff] mentioned it for the first time in her opposition memoranda to the motion to dismiss'"). Plaintiff's reliance on Section 38a-323 appears nowhere in the Complaint.

The Motion to Dismiss Count Six is GRANTED.

*Count 7: Bad Faith*

Count Seven is difficult to understand as against this Defendant. It purports to be brought against both defendants but does not distinguish between them in terms of the alleged misconduct. *See* Compl. at ¶ 66. Rule 8 does not countenance such an approach. *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001) (a complaint does not satisfy Rule 8 "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct.") Further, the factual predicate for the Count is that "Defendants agreed to act in good faith and deal fairly with the Plaintiff *when they entered into the Policy and accepted premiums from the Plaintiff.*" Compl. at ¶ 66. (emphasis added). While a bad faith tort claim might, if not preempted,

10

have been brought against Allstate, the Court is unaware of any basis upon which, based on the allegations in the Complaint, such a claim could be brought against Defendant.

"Connecticut 'recognizes a common-law duty of good faith and fair dealing between an insurer and its insured,'" and this common-law duty gives rise to a cause of action sounding in tort. *See Nationwide Mut. Ins. Co. v. Pasiaki*, No. X08FSTCV094015401, 2011 WL 6413817, at *3 (Conn. Super. Ct. Nov. 30, 2011) (quoting *Carford v. Empire Fire and Marine Ins. Co.*, 94 Conn.App. 41, 46 (2006). Connecticut law also implies into every contract a covenant of good faith and fair dealing. *See*, *e.g.*, *Macomber v. Travelers Property & Cas. Corp.*, 261 Conn. 620, 638 (2002). This, of course, includes contracts for insurance. *See*, *e.g.*, *Heyse v. Case*, 114 Conn. App. 640, 652–53 (2009). Defendant is not an insurer, and Plaintiff is not his insured. And although Defendant cites to a litany of cases which describe the parameters of a bad faith claim, all of them involved claims against an insurer by its insured. And Plaintiff does not cite the Court to any authority in which such a tort claim was permitted against an insurance agent.

But even if Connecticut would recognize such a claim, Plaintiff's wholly conclusory allegations as to Defendant's motives are insufficient. To assert a bad faith claim, a Complaint must allege facts to support an inference that Defendant's conduct was undertaken "with a design to mislead or deceive another or by some interested or sinister motive." *Connecticut Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 3:19-CV-839 (JCH), 2020 WL 6888272, at *12 (D. Conn. Jan. 17, 2020) (internal quotation marks omitted). "Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity ... it contemplates a state of mind affirmatively operating with furtive design or ill will." *Buckman v. People Express, Inc.,* 205 Conn. 166, 171 (1987). Proof of mere negligence fails to support a showing of dishonest purpose. *See Wadia Enterprises, Inc.*

11

*v. Hirschfeld,* 224 Conn. 240, 248-49 (1992). The lynchpin of a bad faith claim is a state of mind characterized by an intent to mislead or deceive or defraud. *Id.*

Plaintiff's opinion notwithstanding, this is a professional negligence case and little more. There are no allegations which support any inference of ill motive or intent to mislead, deceive or defraud. While Defendant's conduct might be, and is, alleged to reveal gross incompetence, this is insufficient to state a bad faith claim.[9]

Count Seven is DISMISSED.

**Conclusion**

For the foregoing reasons, the Motion to Dismiss is GRANTED in part and DENIED in part. Counts Five, Six and Seven are DISMISSED.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of March 2025.

                                                /s/ Kari A. Dooley
                                                KARI A. DOOLEY
                                                UNITED STATES DISTRICT JUDGE

---

[9] Plaintiff attempts to save this claim in his Opposition brief, wherein he alleges that it is "axiomatic that Defendant Garoppolo's 'dishonest purpose' was greed in that his agency commissions would directly and proportionally increase as a result of the certain and significant increase in Plaintiff's flood insurance premiums." Pl.'s Opp'n at 10. However, he makes no such allegation of self-dealing in his Complaint, and "it is well established that [p]laintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss." *Mallison v. Connecticut Off. of Early Childhood*, 634 F. Supp. 3d 21, 32 (D. Conn. 2022) (quoting *Miley v. Hous. Auth. of City of Bridgeport*, 926 F. Supp. 2d 420, 432 (D. Conn. 2013)).